# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 14 cv 3720 |
| v. | ) | |
| | ) | Judge Thomas M. Durkin |
| CITY OF CHICAGO, NICHOLAS, | ) | |
| DUCKHORN, JOSEPH MIRUS, JR., | ) | |
| T.P. FLAHAVEN, KL SPURLIN, | ) | |
| NL DEJESUS, R. LAZZARA, | ) | |
| JL GAYTAN, A JESSANI, JL FORSELL, | ) | |
| JJ PAWLAK, MA LAPADULA, IL SHAVERS, | ) | |
| JR., C BARRY, and JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Willie White has sued the City of Chicago ("City") and thirteen Chicago Police Department ("CPD") officers or employees ("the Individual Defendants"), alleging a constitutional claim for excessive force under 42 U.S.C. § 1983 (Count I), as well as state law claims for battery (Count II) and negligence (Count III). The City and the Individual Defendants have moved to partially dismiss White's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, White's punitive damages claim against the City is dismissed with prejudice, and his § 1983 claim against the City is dismissed without prejudice. In all other respects, Defendants' arguments for dismissal are rejected.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g.,*
*Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th
Cir. 2009). A complaint must provide "a short and plain statement of the claim
showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to
provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp.*
*v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an
unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels
and conclusions, and a formulaic recitation of the elements of a cause of action will
not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged.'"
*Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In
applying this standard, the Court accepts all well-pleaded facts as true and draws
all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## BACKGROUND

### A.    THE NOVEMBER 4, 2013 INCIDENT

On November 4, 2013, White was arrested and taken to the Homan Square
Police Station, where he was held in custody while waiting to be transported to the

11th District Police Station. R. 37 at 2 (¶ 8). He was under the supervision of two CPD officers at the time—Officer Matthew Borkowski and an "unknown" police officer.

The two officers retrieved White from a holding cell and placed him in handcuffs with his hands behind his back. *Id.* at 2-3 (¶ 12). Borkowski walked out of the room a few minutes ahead of White and the unknown police officer. *Id.* at 3 (¶ 13). As the unknown police officer escorted White down the hall, he said something about not liking drug dealers. *Id.* (¶ 14). White responded "fuck you, I'm not a drug dealer," and the unknown police officer responded, "oh yeah, fuck me (or something close to that)." R. 1 at 4.[1] The unknown police officer then pushed White, causing him to fall down twelve to fifteen concrete or steel stairs with his hands still handcuffed behind his back. R. 37 (¶¶ 15-18). White heard the unknown police officer say "shit" and radio for Borkowski "to get back in here." *Id.* (¶ 19). Borkowski returned to the area, and the two officers ordered White to stand up. White was unable to stand on his own, so the two officers lifted him up and walked him to a car. Borkowski and the other officer then transported White to the 11th District Police Station. White reported the incident to detention aides at the 11th District Police Station, who arranged for him to be taken to the hospital where he was diagnosed with a separated shoulder. *Id.* at 4 (¶ 20).

---

[1] The quoted sentences are from the original *pro se* complaint, which has been superseded by the two amended complaints, but nevertheless may be considered in ruling on a motion to dismiss. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012) (factual allegations outside the complaint may be considered in opposition to a motion to dismiss "so long as the new elaborations are consistent with the pleadings").

## B.    PROCEDURAL HISTORY[2]

### 1.    THE *PRO SE* COMPLAINT

Approximately six months after the incident, White filed a *pro se* complaint alleging excessive force in violation of his constitutional rights. White's *pro se* complaint identified Officer Borkowski by name and badge number, but stated that White was unable to identify the second CPD officer who was with Borkowski at the time. The *pro se* complaint named as defendants "John Doe (Unknown Officer) (Defendant to be sued in individual capacity while acting under the color of law)," Chief of Police McCarthy, and the "City of Chicago Police Department." R 1. White did not sue Borkowski.

On May 27, 2014, the Court conducted a preliminary review of White's *pro se* complaint pursuant to 28 U.S.C. § 1915A, and found that White stated a colorable claim of excessive force in violation of 42 U.S.C. § 1983. R. 4 at 2. The Court, however,  interpreted White's naming of the "City of Chicago Police Department" as an attempt to sue the "Chicago Police Department" (as opposed to the "City of Chicago"), and dismissed that defendant because the CPD is not a suable entity. *See, e.g., Averhart v. City of Chicago,* 114 Fed. App'x 246, 247 (7th Cir. 2004). The Court also held that White had not alleged any facts to suggest a colorable § 1983 claim against Police Superintendent McCarthy in his personal capacity. *See Pepper*

---

[2] The Court sets out the procedural history in some detail for two related reasons: to explain why this case has been pending for almost two years without significant progress, and to shed light on the legal ramifications of White's inability to identify the CPD officer whose conduct is at issue. The latter issue is the central focus of the Individual Defendants' motion to dismiss

*v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) ("to be liable under § 1983, the individual defendant must have 'caused or participated in a constitutional deprivation'") (citation omitted). Nevertheless, the Court ordered that McCarthy remain a defendant in the case to assist in identifying the police officer who allegedly pushed White. *See, e.g., Myrick v. Anglin,* 496 Fed. App'x 670, 675 (7th Cir. 2012) (holding that the trial court's dismissal of a healthcare administrator was improper because, among other things, her position would "allow her to identify those responsible for the treatment delays").

In response to the Court's initial § 1915A order, McCarthy entered an appearance through the City Corporation Counsel's office, and then filed a motion to dismiss. R. 7, 8. A hearing on McCarthy's motion to dismiss was held on August 19, 2014. R. 10. Pursuant to its duty to "ensure that the claims of a *pro se* litigant are given a fair and meaningful consideration," *Palmer v. City of Decatur, Ill.*, 814 F.2d 426, 428-29 (7th Cir. 1987) (citation omitted), the Court questioned McCarthy's counsel about steps the City[3] had taken, or might take, to identify the police officer who allegedly pushed White. The City, through its counsel, informed the Court that it had not yet identified the officer in question, but that the City would assist the Court in its efforts on White's behalf to do so.

On September 15, 2014, the Court appointed White an attorney and denied McCarthy's motion to dismiss, stating for the *second* time on the record that

---

[3] Although the named entity defendant at the time was McCarthy and not the City, counsel spoke on behalf of the City. *See Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 382 (7th Cir. 1988) ("An official-capacity suit is not a suit against the official as an individual; the real party in interest is the entity.").

McCarthy was to remain in the case in his official capacity to assist in identifying the police officer who allegedly used excessive force against White. R. 12. Shortly thereafter, White's first court-appointed attorney moved to withdraw. *See* R. 14. The Court then appointed White a second attorney, R. 17, who filed an appearance on October 22, 2014 and attended his first status hearing on October 27, 2014. *See* R. 20, 21. At the status hearing, the Court again asked what efforts had made to identify the John Doe police officer. White's newly appointed counsel had not yet spoken to his client, who was incarcerated at a facility outside the Chicago area. Counsel for the City, however, informed the Court that the City intended to make White's police records available to White's newly appointed counsel for that purpose.

### 2. THE FIRST AND SECOND AMENDED COMPLAINTS

On April 8, 2015, White's appointed counsel filed the first of two amended complaints on White's behalf. The first amended complaint re-alleged a constitutional claim for excessive force and added two state law claims (battery and negligence). R. 33. Although the City turned over White's police records sometime in January 2015, those records apparently did not resolve the John Doe issue. Therefore, the amended complaint again named a "John Doe" police officer as the responsible officer, and also reasserted an entity claim against the CPD (in place of McCarthy). Upon being informed at a status hearing held on April 23, 2015 that the CPD was not a suable entity, White's appointed counsel made an oral motion to substitute the City in place of the CPD, which officially made the City a defendant

by name when the Court granted that motion. *See* R. 34. Also at the April 23rd status hearing, the Court once again inquired about why the John Doe officer had not yet been named, this time specifically expressing concern that the statute of limitations was at risk of running out. Counsel for the City assured the Court that the statute of limitations did not expire for another six months. Counsel for the City must have had in mind, however, the two-year statute of limitations applicable to White's § 1983 claims,[4] not the one-year statute of limitations applicable to White's newly asserted state law claims,[5] which had expired on November 4, 2014, more than five months earlier.

On June 30, 2015, White's court-appointed counsel filed a second amended complaint alleging the same three claims as the first amended complaint but adding as defendants all of the police officers whose names appeared in White's police records (the Individual Defendants). This was done at the Court's suggestion, made at the preceding status hearing to protect against the running of the statute of limitations on the assumption that one of those officers likely was the John Doe defendant. R. 37.

---

[4] *See Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007).

[5] *See* 745 ILCS 10/8-101(a) ("No civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued.").

### 3. MOTIONS TO DISMISS

The first motion currently before the Court is the City's motion to dismiss filed on July 31, 2015. R. 38. The City's motion seeks dismissal of White's § 1983 claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 694 (1978). The City also raises several arguments for governmental immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), and further argues that White's negligence claim against it is barred by the Tort Immunity Act's one-year statute of limitations. *See* R. 38. The City does not move to dismiss White's battery claim.

The second motion before the Court is the joint motion to dismiss filed by the Individual Defendants. The Individual Defendants were not served until November 2015, and are represented by the same counsel as the City. They filed a joint motion to dismiss on December 30, 2015, as well as a joint answer to the second amended complaint. Their motion to dismiss adopts the City's arguments for dismissal of White's negligence claim, and, in addition, raises a separate statute of limitations argument for dismissal of White's battery claim based on their late joinder as named defendants in the case. R. 61.

## DISCUSSION

### A. SECTION 1983

Defendants make two arguments regarding White's § 1983 claim. First, the City argues that White's § 1983 claim should be dismissed based on White's failure

to allege facts that would support *Monell* liability.[6] White concedes that he has not currently alleged a factual basis for a *Monell* claim. *See* R. 51 at 1. As a result, White initially agreed to voluntarily dismiss his § 1983 claim against the City. *Id.* White later amended his response, however, to say that "widespread allegations of the City's systematic abuse of civil rights of persons detained at the specific police facility where the instant misconduct occurred" had recently come to his attention. R. 74 at 2. White therefore has withdrawn his offer to voluntarily dismiss his § 1983 claim against the City, and now requests leave to amend his complaint to allege a widespread practice or custom by the City. *Id.* In light of White's concession that the second amended complaint does not adequately plead a *Monell* claim, the Court grants the City's motion to dismiss White's § 1983 claim against it. The dismissal, however, is without prejudice, and the Court also grants White's request to file an amended complaint to attempt to allege a *Monell* claim.

Second, both the City and the Individual Defendants challenge White's § 1983 claim to the extent that it is based on an alleged violation of the Eighth Amendment. Defendants are correct that the Eighth Amendment does not apply to pretrial detainees like White.[7] But a motion to dismiss on this basis is improper;

---

[6] *See, e.g., Johnson v. Cook Cnty.*, 526 Fed. App'x 692, 695 (7th Cir. 2013) (to state a valid *Monell* claim, facts alleged in complaint must plausibly suggest (1) the existence of "an express policy that, when enforced, causes a constitutional deprivation"; (2) "a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law"; or (3) a constitutional injury that "was caused by a person with 'final decision policymaking authority'").

[7] *See Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977).

White may proceed with his § 1983 claim pursuant to his factual allegations, which state a valid claim for constitutional deprivation under the Fourteenth Amendment.[8] Defendants are advised to simply ignore the reference to the Eighth Amendment. *See Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 821 (7th Cir. 2001) (citing *Bennett v. Schmidt*, 153 F.3d 516, 517 (7th Cir. 1998) ("Fat in a complaint can be ignored.")).

### B.   PUNITIVE DAMAGES

White concedes that the City may not be held liable for punitive damages under Illinois law. *See* R. 51 at 6; *see* 745 ILCS 10/2-102 ("a local public entity is not liable to pay punitive damages in any action brought directly or indirectly against it by an injured party or a third party"). In addition, "municipalities are immune from punitive damages in § 1983 suits." *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010). Therefore, White's punitive damages claim against the City (but not against the Individual Defendants) is dismissed.

### C.   TORT IMMUNITY ACT

The common law principle of local governmental tort immunity was first recognized in Illinois in 1844, but was abolished by the Illinois Supreme Court in its landmark decision in *Molitor v. Kaneland Community Unit District No. 302*, 163

---

[8] *See Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014) (per curiam) (summarily reversing on the ground that the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"); *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999) ("We have consistently held that plaintiffs are not required to plead legal theories. While a plaintiff may plead facts that show she has no claim, she cannot plead herself out of court by citing to the wrong legal theory or failing to cite any theory at all.") (citations omitted).

N.E.2d 89 (Ill. 1959). *See Coleman v. E. Joliet Fire Prot. Dist.,* 46 N.E.3d 741, 750 (Ill. 2016). After *Molitor*, a unit of local government became liable in tort under the common law to the same extent as a private party. *See Prough v. Madison Cnty.,* 984 N.E.2d 1177, 1183 (Ill. App. 2013). This potential liability includes liability for any torts committed by an employee under a theory of *respondeat superior*, which "extends to the negligent, willful, malicious or even criminal acts of its employees, when those acts are committed within the scope of employment." *Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009). In response to the *Molitor* decision, the Illinois legislature enacted the Tort Immunity Act, with the purpose of "'protect[ing] local public entities and public employees from liability arising from the operation of government.'" *Coleman*, 46 N.E.3d at 750 (quoting 745 ILCS 10/1–101.1). The statute "applies to [l]ocal public entit[ies], including counties, fire protection districts, and other local governmental bodies," and "adopted the general principle that local governmental units are liable in tort, but limited this liability with an extensive list of immunities based on specific government functions." *Id.* (internal quotation marks and citations omitted).

The City cites to a number of sections of the Tort Immunity Act, arguing that all of these provisions are applicable to provide immunity to the City for White's negligence claim. The Individual Defendants do not specifically address any of these provisions, but instead request permission to join in the City's arguments, asserting that the immunity provisions on which the City relies "are equally applicable to [them]." R. 61 at 5. The City's immunity arguments, however, are conclusory, and

fail to adequately develop or analyze the legal and factual components of each immunity claim. The Court therefore could summarily deny the City's motion without further discussion.[9] Nevertheless, the Court conducted its own analysis of the pertinent legal authority, and sets forth its conclusions on each immunity issue below.

## 1. IMMUNITY FOR EXECUTION OR ENFORCEMENT OF THE LAW

Defendants seek immunity from White's negligence claim pursuant to § 2-202 and § 2-109 of the Tort Immunity Act. Section 2-202 provides that

> A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.

745 ILCS 10/2-202.

Section 2-109 provides that

> A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.

745 ILCS 10/2-109.

"Ordinarily, the determination of whether an officer was enforcing the law is a question of fact that must be determined by the trier of fact in light of the circumstances in each case," but "a court may, as a matter of law, determine

---

[9] *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *Opp v Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1066 (7th Cir. 2000) (court need not consider conclusory, one-paragraph argument); *see also Marx v. Northwestern Mem'l Hosp.*, 2007 WL 1280643, at * 5 (N.D. Ill. Apr. 30, 2007) ("reject[ing] Defendants' underdeveloped argument[s] [based on] the [Tort Immunity Act]").

whether officers were enforcing a law when the facts alleged support only one conclusion." *Lacey v. Vill. of Palatine*, 904 N.E.2d 18, 28 (Ill. 2009). Defendants assert their immunity under § 2-202 and § 2-109 can be determined as a matter of law because the allegations of the complaint show (1) that White "had been arrested and was waiting for transportation from the Homan Square police facility to the 11th District Police Station" at the time of the incident, and (2) that "the unknown officer was acting [in] his capacity as a sworn police officer at the time of the events." R. 56 at 2.

### a. MEANING OF "EXECUTING OR ENFORCING" A LAW

The City cites to only two cases in support of its § 2-202 immunity argument. The first is *O'Connor v. City of Chicago*, 1989 WL 15976 (N.D. Ill. Feb. 21, 1989), wherein the court stated that two police officers "were executing or enforcing a law within the meaning of the [Tort Immunity] Act when they placed plaintiff in the lock-up cell in the holding area" after he was arrested, explaining that "[p]laintiff's incarceration was a natural part of the law enforcement sequence of events that began when he was arrested and charged." *Id.* at *8. This legal conclusion was reached without citation to or analysis of any relevant legal authority. Moreover, it was unnecessary; even if the conduct in question qualified as executing or enforcing a law, the defendant officers were not entitled to immunity in that case because the complaint alleged an assault, which fell under the exception for willful and wanton misconduct. *Id.* In any event, *O'Connor* was decided *before* the Illinois Supreme Court's decision in *Aikens v. Morris*, 583 N.E.2d 487 (Ill. 1991). The City's failure to

cite *Aikens* is notable because *Aikens* is one of the leading cases on the scope of the immunity for execution or enforcement of a law and involves facts difficult to distinguish from those here.

The two police officers in *Aikens* were transporting a prisoner via police car to the police station. *Id.* at 489. "The prisoner had been previously placed under formal arrest and was handcuffed." *Id.* The police car collided with another vehicle as it entered an intersection. *Id.* The Illinois Supreme Court agreed with both the trial and appellate courts that the police officer "was not enforcing or executing a law at the time of the accident by transporting an arrestee." *Id.* at 493. In explaining its rationale, the *Aikens* court acknowledged that execution and enforcement of the law often involves a course of conduct rather than one particular act. *Id.* at 492-93 (discussing *Morris v. City of Chicago*, 474 N.E.2d 1274, 1278 (Ill. 1985) ("the undisputed facts show an unbroken effort on Rowan's part to respond to a radio call of a crime in progress")). Nevertheless, the *Aikens* court held firm in the conclusion previously stated in *Arnolt v. City of Highland Park,* 282 N.E.2d 144 (Ill. 1972), that "a public employee is not afforded section 2–202 immunity for all activities in the performance of his or her duties." *Aikens*, 583 N.E.2d at 490. The *Aikens* court explained that "use of the term 'course of conduct,' focuses the inquiry on "activities that have definite and cohesive parameters." *Id.* at 491 (discussing *Thompson v. City of Chicago*, 484 N.E.2d 1086, 1088 (Ill. 1985)). But the course-of-conduct principle "in no way abrogates the principle [established in *Arnolt*] that section 2–202 immunity is a limited immunity, which dimensions are narrower than the scope

of a police officer's employment or his performance of official functions and duties." *Aikens*, 583 N.E.2d at 491. In short, the *Aikens* court said, "a police officer is not *ipso facto* engaged in the 'execution or enforcement' of law simply because he is on duty within the scope of his employment." *Id.* Furthermore, the fact that state statutes authorize or allow the transportation of an arrestee also is not dispositive, because "virtually every police function or duty is pursuant to some legal authorization in the broadest sense." *Id.* at 493. "Arguably, then the performance of any task while on duty is in enforcement or execution of the law," a result the *Aikens* court did "not believe . . . the legislature intended." *Id.*

The City has cited to only one post-*Aikens* decision—*Jones v. Village of Villa Park*, 784 F. Supp. 533 (N.D. Ill. 1992). The plaintiff in *Jones* alleged he was suffering an insulin attack when police officers were arresting him. *Id.* at 534. Because the plaintiff "specifically allege[d] that the negligence occurred in the course of arresting him," the court found that the alleged negligence "was part of acts enforcing or executing the law" for which the defendants were immune. *Id.* at 536. In contrast, here, the alleged incident occurred *after* White was arrested and already in custody at the police station. In fact, the Court cannot say based on the allegations of the complaint whether the officer who allegedly pushed White was even involved in White's arrest.[10] To hold on the current record that the unidentified officer was executing and enforcing a law at the time of White's fall

---

[10] Not only do the pleadings not reveal this information, but counsel for the City informed the Court at more than one status hearing that White told investigators looking into the incident that he believed the police officer who pushed him was not one of the arresting officers.

would be the same as saying the officer in question is entitled to § 2-202 immunity based solely on the fact that he was on duty at the time of the incident, an interpretation of § 2-202 squarely rejected by the Illinois Supreme Court. The facts alleged in the complaint do not establish as a matter of law that Defendants have immunity for conduct in the execution or enforcement of a law, and therefore the Court denies Defendants' motion to dismiss on this basis.

### b. WILLFUL AND WANTON EXCEPTION

The City's argument for tort immunity based on § 2-202 and § 2-109 must be denied for another reason as well. The tort immunity provided by § 2-202 only applies if the conduct at issue is *not* willful and wanton. *See* 745 ILCS 10/2-202. The Act defines "willful and wanton misconduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. The City argues, first, that the claim for which it seeks dismissal is negligence, not "willful and wanton misconduct." But Illinois law recognizes a form of negligence that is willful and wanton. *See Breck v. Cortez*, 490 N.E.2d 88, 93 (Ill. App. 1986) ("The elements of a cause of action for willful and wanton negligence are a duty to the injured party, and a breach of that duty which is a proximate cause of the injury."). Thus, it is possible for White's negligence claim to fall under the "willful and wanton" exception to § 2-202 immunity. *See, e.g., Trepachko v. Vill. of Westhaven*, 540 N.E.2d 342, 347 (Ill. App. 1989) ("[I]n order to recover for injuries which occur during the execution or enforcement of a law by a

public employee, plaintiffs must allege facts amounting to wilful and wanton negligence.").

The City responds that if White's claim is for willful and wanton negligence, then that claim should be dismissed as redundant of his battery claim. As an initial matter, the City fails to distinguish between two distinct negligence claims alleged in the second amended complaint. Construed liberally in favor of White, the second amended complaint alleges both (1) that the unidentified police officer was negligent in causing White to fall down the stairs, and (2) that the City was negligent in failing to supervise or control the unidentified police officer. A negligent failure to supervise claim also can rise to the level of willful and wanton negligence. *See Henslee v. Provena Hosps.*, 369 F. Supp. 2d 970, 980 (N.D. Ill. 2005) ("Illinois case law strongly suggests that a fact-finder can find that a defendant's conduct is willful and wanton if the defendant fails to follow applicable guidelines and procedures."). White's negligent supervision claim obviously is separate and distinct from, and thus not redundant of, his battery claim.

In addition, even as to White's negligence claim against the unidentified police office (for which the City potentially has *respondeat superior* liability), the case cited by the City for its redundancy argument—*Napoles v. Johnson*, 2013 WL 1943304 (N.D. Ill. May 8, 2013)—is distinguishable. The two claims found to be duplicative in *Napoles* were battery and aggravated battery. *Id.* at *3. The two state law claims at issue here are battery and willful and wanton negligence. Unlike battery and aggravated battery, battery and willful and wanton negligence are

17

separate torts under Illinois law, distinguishable by the required mental state. *See Cat Iron, Inc.* v. *Bodine Envtl. Servs., Inc.*, 2011 WL 5078206, at *5 (C.D. Ill. Oct. 25, 2011) ("The Illinois Supreme Court has explained that there are two types of willful and wanton conduct—intentional or reckless—which are distinguishable based on the mental state of the defendant.") (citing *Poole v. City of Rolling Meadows*, 656 N.E.2d 768, 771 (Ill. 1995)). Thus, White may plead and attempt to prove both his battery and his willful and wanton negligence claims, *see* Fed. R. Civ. P. 8(d)(3), although he can recover only once for his injuries, *see Gehrett v. Chrysler Corp.*, 175, 882 N.E.2d 1102, 1115 (Ill. App. 2008).

Finally, contrary to the City's suggestion, it is irrelevant that White alleges that the unidentified police officer "intentionally" pushed him down the stairs, and does not specifically allege the legal standard for a claim of willful and wantonness, *i.e.,* "utter indifference to or conscious disregard for the safety of others or their property," 745 ILCS 10/1-210. It is well established that "[p]laintiffs need only plead facts, not legal theories, in their complaints." *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.,* 759 F.3d 698, 701 (7th Cir. 2014). And the facts alleged here support either intentional conduct (battery claim) or "utter indifference" conduct (willful and wanton negligence claim). White alleges he was cooperative, acting peaceably, and was not resisting the unidentified police officer in any way when the latter pushed him from behind. Because the police officer was standing behind White at the time, the Court infers that White did not actually see, but only felt, the officer push him. While it seems unlikely, it is not wholly implausible that something other than an

intentional push or shove caused White to fall down the stairs. If that were the case, whatever else happened could qualify as "ignor[ing] known or plainly observable dangerous conditions and do[ing] something that will naturally and probably result in injury to another." *Carter v. Chi. Police Officers*, 165 F.3d 1071, 1081 (7th Cir. 1998).

Whether a public employee "'is guilty of willful and wanton conduct is a question of fact for the jury and should rarely be ruled upon as a matter of law.'" *Clark v. City of Chicago*, 595 F. Supp. 482, 487 (N.D. Ill. 1984) (quoting *Glover v. City of Chicago*, 436 N.E.2d 623, 630 (Ill. App. 1982)). The Court declines to rule as a matter of law based on the pleadings that there are no possible facts that might be shown in discovery, which do not amount to intentional misconduct but could be sufficient to meet the willful and wanton standard. Therefore, the Court concludes White adequately has alleged willful and wanton negligence against the unknown police officer, which is separate and distinct from his battery claim and potentially falls outside the immunity accorded by § 2-202.

### 2. IMMUNITY FOR ACTS OR OMISSIONS OF ANOTHER

The City next argues for dismissal of White's negligence claim based on § 2-204 and § 2-109 of the Tort Immunity Act. Section 2-204 states that:

> Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person.

745 ILCS 10/2-204. Section 2-109, as previously noted, protects the City from liability if the employee is not liable.

The City's argument under § 2-204 is somewhat convoluted. The City contends, first, that § 2-204 protects the Individual Defendants who did *not* push White from liability for the conduct of the one police officer who allegedly *did* push White. R. 38 at 9. The Court agrees, but does not see the relevance of that argument. White states in his opposition brief he has named all thirteen Individual Defendants only for the purpose of identifying which of them is the officer who pushed White, not because he seeks to hold any of them liable for the conduct of any other. R. 51 at 4. The Court agrees that the Individual Defendants were joined for the purpose of identifying the responsible officer in question, and, accordingly, holds that § 2-204 has no bearing on White's claims against those defendants. Nevertheless, the City appears to be arguing for dismissal simply because White cannot identify *which* of the Individual Defendants is the police officer whose conduct is at issue. *See* R. 38 at 9 ("because Plaintiff could not hold the officers who did not push him liable . . . for the unknown officer's action, the City cannot be found liable"). Again, however, White does not seek to hold the City liable for the Individual Defendants who did not push him; he seeks to hold the City liable for the police officer who did push White. Presumably, that officer is among the Individual Defendants. But even if he is not, the second amended complaint continues to name a John Doe officer in addition to the Individual Defendants, for whose conduct the City can be held liable.[11] The Court also notes that the City's argument ignores

_____

[11] While § 2-204 protects the Individual Defendants who did not push White from liability for the conduct of the unidentified police officer, it does *not* protect the City from such liability. *See Thomas ex rel. Smith v. Cook Cnty. Sheriff*, 401 F. Supp. 2d

White's allegations of negligent supervision, for which the City may be held liable independent of the liability of any of the Individual Defendants. The City's argument for dismissal based on § 2-204 and § 2-109, therefore, is rejected.

### 3. IMMUNITY FOR DECISIONS INVOLVING DISCRETION AND POLICY

The next immunity argument the City makes is based on § 2-201 of the Tort Immunity Act, which states that:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201. Section 2-201 applies to the decisions of municipal employees responsible for supervision of police officers, and, through the application of § 2-109 grants immunity to the City as well. *See Kennell v. Clayton Twp.*, 606 N.E.2d 812, 815 (Ill App. 1992) ("If the alleged wrongdoing relates to a discretionary act of an employee, there is immunity for both the employee and the public entity, regardless of whether the employee is a party defendant."). The City's immunity argument under § 2-201 plausibly applies only to White's claim against the City for negligent supervision.[12]

---

867, 875 (N.D. Ill. 2005) (holding that "institutional defendants are not included within the plain language" of § 2-204).

[12] Although neither the City nor the Individual Defendants are clear about this, the unidentified police officer who pushed White cannot make a credible argument that his conduct in pushing White involved a determination of policy or the exercise of discretion.

According to the Illinois Supreme Court, § 2-201 immunity requires that the public employee's actions be "*both* a determination of policy *and* an exercise of discretion." *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 283 (Ill. 2003) (emphasis added) (internal citation marks and citation omitted). A policy decision "require[s] the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Id.* (internal quotation marks and citation omitted). "[D]iscretionary acts are those which are unique to a particular public office," as distinguished from "ministerial acts," which are those "perform[ed] on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Snyder v. Curran Twp.*, 657 N.E.2d 988, 993 (Ill. 1995); *see also In re Chicago Flood Litig.*, 680 N.E.2d 265, 272 (Ill. 1997) ("Official duty is ministerial, when it is absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it, prescribes and defines the time, mode and occasion of its performance with such certainty, that nothing remains for judgment or discretion.") (internal quotation marks and citation omitted).

The City cites *Reed v. City of Chicago,* 2002 WL 406983, at *3 (N.D. Ill. Mar. 14, 2002), and *Taylor v. City of Chicago*, 1997 WL 51445, at *4 (N.D. Ill. Feb. 3, 1997), in support of its argument that the Court can determine from the allegations of the complaint that White's negligent supervision claim is barred by § 2-201

immunity. While both decisions apparently reached this conclusion,[13] more recent case law rejects it. *See Smith v. City of Chicago*, 143 F. Supp. 3d 741, 762-63 (N.D. Ill. 2015) (court could not determine from the complaint's allegations whether the City's supervision of its police officers was both a determination of policy and an exercise of discretion); *Hogan v. Smith*, 2012 WL 1435402, at *3 (S.D. Ill. Apr. 25, 2012) ("Though both [policy and an exercise of discretion] often are involved in supervising employees, this is not enough to require dismissal. . . . The act of training and supervision in question could easily be ministerial rather than discretionary, and Cairo and Smith do not point to any allegations in the complaint to contradict this possibility."); *Patton v. Chicago Heights*, 2010 WL 1813478, at *3 (N.D. Ill. May 3, 2010) ("[W]hile intuitively, it would seem that the training of police officers would require discretion and involve policy determinations, cases are not to be decided on the basis of intuition. . . . [I]t is certainly not impossible that the training of police officers . . . may be . . . inflexibly dictated by a set of rules and orders imposed on that do not allow any deviation.").

   This Court agrees with this more recent case law. Specifically, the Court cannot determine from White's allegations alone that the City's training and supervision of the police officer who pushed White required both a determination of policy and an exercise of discretion. *See, e.g., In re Chicago Flood Litig.*, 680 N.E.2d

---

[13] The *Taylor* court, however, only addressed the discretion prong of § 2-201 immunity and failed to consider whether a determination of policy was involved. *See Taylor,* 1997 WL 51445, at *4 (holding that "[s]ubsidiary acts associated with the operation of a police department," including hiring and training decisions, "are inherently discretionary and, therefore, subject to the immunities provided by the Tort Immunity Act").

at 272-73 ("A corporation acts judicially, or exercises discretion, when it selects and adopts a plan . . .; but *as soon as it begins to carry out that plan*, it acts ministerially . . . .") (internal quotation marks and citation omitted) (emphasis added). Section 2-201 is an affirmative defense that need not have been anticipated in the complaint. *Van Meter*, 799 N.E.2d at 280. In addition, the Illinois Supreme Court has said that the determination of whether an action is discretionary or ministerial "resists precise formulation and . . . must be made on a case-by-case basis." *Snyder,* 657 N.E.2d at 993-94. Therefore, the City's motion to dismiss on the basis of § 2-201 must be denied.

### 4. IMMUNITY FOR FAILURE TO PROVIDE ADEQUATE POLICE PROTECTION AND FACILITIES

The City's final immunity argument is that White's negligence claim is barred by either § 4-102 or § 4-103 of the Tort Immunity Act.

Section 4-102 provides that:

> Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. This immunity is not waived by a contract for private security service, but cannot be transferred to any non-public entity or employee.

745 ILCS 10/4-102.

Section 4-103 provides that:

> Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide

sufficient equipment, personnel, supervision or facilities therein. Nothing in this Section requires the periodic inspection of prisoners.

745 ILCS 10/4-103.

The Illinois Appellate Court has explained that "section 4-102 grants public employees immunity for the failure to prevent a crime," while "[s]ection 4-103 involves detention[ ] facilities." *Bollinger v. Schneider*, 381 N.E.2d 849, 851 (Ill. App. 1978). The court further held that the applicable section is the one that is "more specific and is particularly applicable to the relation of the parties." *Id*. Thus, an injury sustained by the plaintiff "when he was physically and sexually assaulted by other inmates while confined in the juvenile section of the Rock Island County Jail" is governed by § 4-103, not § 4-102. *Id*. This case involves an injury sustained by a person in custody at the police station, who was injured not by a third party but by an employee of the City. It therefore does not fit neatly within either of the two cited immunity provisions. But even if one or both of those provisions apply, the Court cannot resolve the immunity question based on the City's motion to dismiss.

### a. SECTION 4-102

Section 4-102 of the Tort Immunity Act codifies the separate common law "public duty" rule pursuant to which "municipalities or their employees are not liable for failure to supply police or fire protection." *Prough*, 984 N.E.2d at 1183. (quoting *Aikens*, 583 N.E.2d at 590 n.1).[14] The Illinois Supreme Court has

---

[14] The Illinois Supreme Court recently abolished the common-law "public duty" rule (and the related "special duty" exception), holding that the legislature's enactment of statutory immunities has "supplanted" them and rendered them "obsolete."

interpreted § 4-102 as being "comprehensive in the breadth of its reach, addressing situations where no police protection is provided to the general public and those in which inadequate protection is provided." *DeSmet v. Cnty. of Rock Island*, 848 N.E.2d 1030, 1042 (Ill. 2006). Thus, police departments in Illinois are immune to "[a]llegations [that] implicate the structural adequacy of the police protection services that [municipalities] provide[ ] to the general public." *Id.* at 1041.

White argues that § 4-102 is inapplicable because the complaint does not allege a claim of inadequate police protection. R. 51 at 4. Language in the case law supports White's contention that § 4-102 applies to claims implicating police protection services to members of the "general public," as opposed to claims implicating police services to persons in police custody. *See, e.g., DeSmet*, 848 N.E.2d at 508-09 (under the public duty rule, "the police department's duty to preserve the well-being of the community is owed to the public at large, rather than specific individuals"). It would seem, therefore, that the public duty rule codified in § 4-102 would not apply to the facts of this case, and several courts have so held. *See, e.g., LaPorta v. City of Chicago*, 102 F. Supp. 3d 1014, 1019 (N.D. Ill. 2015) ("LaPorta's claim is not that the City breached its duty to him by failing to provide adequate police protection. Rather, LaPorta alleges that the City breached its duty by retaining an officer who allegedly posed a threat to the public. A city's duty [ ] 'to refrain from hiring or retaining an employee who is a threat to third persons to

---

*Coleman,* 46 N.E.3d at 757. *Coleman* does not affect the Court's analysis here, which applies the immunity accorded by § 4-102 and not the common law "public duty" rule.

whom the employee is exposed' exists independently of its duty to provide police protection. For this reason, Section 4–102 of the Act does not bar LaPorta's claim.") (citing *Bates v. Doria*, 502 N.E.2d 454, 458 (Ill. App. 1986) (holding that "[t]he public duty doctrine is inapplicable . . . where plaintiff seeks to impose liability based upon the defendants' negligent employment of a law enforcement officer, not upon defendants' failure to prevent the commission of crimes")); *see also Colon v. Town of Cicero*, 2015 WL 9268208, at *2 (N.D. Ill. Dec. 21, 2015) ("Because plaintiff's negligent hiring and supervision claims do not arise from an alleged failure to provide police protection, they are not barred by § 4-102").[15]

The only case law cited by the City in support of applying § 4-102 to the facts here is this Court's opinion in *Crowell v. City of Chicago*, 2014 WL 3585300 (N.D. Ill. July 21, 2014). Apart from the fact that the City cited to *Crowell* in its reply brief,[16] this Court's opinion in that case is not controlling. While *Crowell* does involve application of § 4-102 to a claim against the City for negligent supervision of

---

[15] *Cf. Zimmerman for Zimmerman v. Vill. of Skokie,* 697 N.E.2d 699, 702 (Ill. 1998) (discussing the "special duty doctrine" exception to the common law public duty rule, which was applicable "in certain limited instances where a governmental entity has assumed a special relationship to an individual so as to elevate that person's status to something more than just being a member of the public") (internal quotation marks and citation omitted), *abrogated on other grounds by Coleman,* 46 N.E.3d 741; *Regalado v. City of Chicago,* 40 F. Supp. 2d 1009, 1014 (N.D. Ill. 1999) (two exceptions to the general rule that "governmental entities and their personnel . . . '[have] no affirmative constitutional duty to provide medical services to ... citizens' . . . are (1) where plaintiff was in government custody at the time he or she was deprived of medical attention and (2) where the state itself created the danger") (citation omitted).

[16] *See United States v. Boyle*, 484 F.3d 943, 946 (7th Cir. 2007) (reply briefs should not be used to raise new matters that should have been in the opening brief).

a police officer who assaulted the plaintiffs, the plaintiffs in *Crowell* were not arrestees in police custody at the time of the assault. *See* 2014 WL 3585300, at *1. Moreover, the procedural posture of *Crowell* limits the Court's holding. The case was originally filed in state court. Prior to its removal to federal court, the state court had dismissed the plaintiffs' negligent supervision claim on the basis of § 4–102. *Id.* at *3. The issue before this Court after removal was whether the law of the case doctrine prevented the Court from revisiting the state court's dismissal order. That question depended on whether there was "a compelling reason [to do so], such as manifest error or a change in the law." *Id.* at *4. This Court began its analysis of that question by acknowledging that there was no precedent to support applying § 4-102 outside of the usual circumstances (*i.e.,* police officers actively attempting or failing to provide police protection services to the public), and, specifically, no precedent to support applying it to claims of negligent retention or supervision in the employment context. *Id.* at *5. Nevertheless, this Court concluded that "[t]his lack of authority directly on point is not a basis to conclude . . . that the state court . . . committed 'manifest error' when it dismissed" the plaintiffs' negligent supervision claim pursuant to § 4-102. *Id.*

Because *Crowell* was only reviewing the state court's ruling for "manifest error," Defendants cannot rely solely on that case for arguing that § 4-102 applies here. Without further analysis and legal support for doing so, the Court declines to hold at this stage of the proceedings that § 4-102 provides governmental immunity

for an injury caused by an employee of the City to an arrestee who was at the police station in the custody of that employee at the time of the alleged assault.

### b.   SECTION 4-103

For its argument based on § 4-103, the City cites to *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1044 (7th Cir. 1998), and *Kocian v. Unknown Chicago Police Officers*, 2001 WL 30509, at *2 (N.D. Ill. Jan. 11, 2001). The allegation in *Payne* was that the City failed to prevent an arrestee from inflicting harm on himself. The allegation in *Kocian* was that the City failed to protect a detainee from a battery committed by another detainee. This case does not involve either an arrestee or inmate harming himself or a detainee or inmate being harmed by another detainee or inmate. Instead, this case involves an arrestee being harmed by an employee of the City. The issue of whether the Illinois legislature intended for § 4-103 to apply in the factual circumstances of this case has not been adequately briefed by the parties. The Court therefore declines to rule on this issue until there has been further development of the facts and applicable legal principles.

### D.   STATUTE OF LIMITATIONS

"The statute of limitations is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in his complaint." *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993). Nevertheless, a plaintiff can "plead[ ] himself out of court" if "he pleads facts that show that his suit is time-barred." *Id.* The one-year statute of limitations applicable to White's state law

claims[17] began to run on November 4, 2013, when the incident occurred. *See State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co.*, 914 N.E.2d 577, 593 (Ill. App. 2009) (tort cause of action generally accrues at the time of the injury). The one-year statute of limitations expired, therefore, on November 4, 2014. White filed the original *pro se* complaint in a timely manner on May 19, 2014. But White did not add the state law claims or name the Individual Defendants as defendants until after expiration of the one-year statute of limitations. Therefore, White's state law claims are barred unless they can be saved through application of either the relation-back rule of Fed. R. Civ. P. 15(c),[18] or equitable principles of tolling, *see, e.g., Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 561-62 (7th Cir. 1996).[19]

### 1. NEGLIGENT SUPERVISION CLAIM AGAINST THE CITY

#### a. RULE 15(c)(1)(B)

Federal Rule of Civil Procedure 15(c)(1)(B) provides the following:

---

[17] It is undisputed that White's § 1983 claim was timely filed as to all defendants under the two-year statute of limitations applicable to that claim. *See O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015).

[18] The Federal Rules of Civil Procedure govern whether the amendment of a complaint relates back to the original complaint, even if jurisdiction is based on diversity of citizenship. *See Household Commercial Fin. Servs., Inc. v. Trump*, 863 F. Supp. 735, 741 (N.D. Ill. 1994).

[19] The Court applies Illinois law to decide whether White's state law claims should be equitably tolled. *See Bryant v. City of Chicago*, 746 F.3d 239, 243 (7th Cir. 2014). But since Illinois case law is not clear regarding the scope of the equitable tolling doctrine under Illinois law, courts in this circuit have relied to a large extent on the Seventh Circuit's articulation of Illinois equitable tolling law. *See, e.g., Aleman v. Dart*, 2010 WL 502755, at *3-5 (N.D. Ill. Feb. 9, 2010).

**(1)** ***When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:

. . . .

**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; . . . .

The City argues that White's negligent supervision claim does not relate back under Rule 15(c)(1)(B) because the conduct at issue—the City's failure to supervise or control the officer who pushed White—is not the same conduct, transaction, or occurrence that is set out in the original complaint. R. 38 at 11-13.[20]

Amendments that "expand or modify the facts alleged in the earlier pleading" typically "meet the Rule 15(c)(1)(B) test and will relate back." 6A Fed. Prac. & Proc. Civ. § 1497 (3d ed.). Occasionally, they will not, but only when allowing relation back will contravene the policy behind the statute of limitations. *See Paulk v. Dep't of Air Force, Chanute Air Force Base*, 830 F.2d 79, 82 (7th Cir. 1987) ("Relation back is intimately connected with the policy of the statute of limitations."). Thus, neither new facts nor a new legal theory will prevent relation

---

[20] The City's motion only raises the statute of limitations as a defense to White's negligent supervision claim. While the Individual Defendants say they are adopting the City's statute of limitations' argument, they are not defendants in the negligent supervision claim. Therefore, the City's arguments do not apply to them. To the extent that the briefing is unclear and either the City or the Individual Defendants are attempting to argue that White's negligence and/or battery claims against the John Doe police officer (and the City vicariously for the John Doe police officer's conduct) do not relate back under Rule 15(c)(1)(B), that argument is summarily rejected. *See, e.g., Jacobson v. Nat'l R.R. Passenger Corp.*, 1999 WL 1101299, at *6 (N.D. Ill. Nov. 29, 1999) (battery claim arises out of same conduct as excessive force claim and relates back); *Ford v. Davis*, 878 F. Supp. 1124, 1127 (N.D. Ill. 1995) (same).

back so long as "the alteration of the original pleading is [not] so substantial that it can [ ] be said that [the] defendant was [not] given adequate notice of the conduct, transaction, or occurrence that forms the basis of the new claim or defense." 6A FED. PRAC. & PROC. CIV. § 1497 (3d ed.). In short, "notice is the critical element involved in Rule 15(c) determinations." *Staren v. Am. Nat'l Bank & Trust Co. of Chi.*, 529 F.2d 1257, 1263 (7th Cir. 1976).[21]

The Court rejects the City's argument that White's § 1983 claim did not give it notice of the conduct, transaction, or occurrence that forms the basis of his negligent supervision claim. Both his negligent supervision claim and his excessive force claim arise out of the same core set of facts alleged in the original complaint, namely, the conduct of the unidentified police officer in pushing White thereby causing him to fall down the stairs. To argue that the negligent supervision claim is entirely separate from the excessive force claim "is not responsive to the reality" and would "defeat unjustly [White's] opportunity to prove his case." *Paulk*, 830 F.2d at 82; *see also Boyd v. Hein*, 2015 WL 3476312, at *8 (N.D. Ill. June 1, 2015) (newly alleged failure to intervene claim against three officers who did not actively

---

[21] *See also Marshall v. H & R Block Tax Servs., Inc.*, 564 F.3d 826, 829 (7th Cir. 2009) ("'the criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one'" (quoting *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006))); *In re Safeco Ins. Co. of Am.*, 585 F.3d 326, 331 (7th Cir. 2009) ("The essential inquiry is whether 'the original pleading furnishes the defendant with notice of the events that underlie the new contention.'" (quoting *Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755, 757 (7th Cir. 2006))).

participate in alleged incident arose out of same events set out in original pleading alleging excessive force by fourth officer).

The City seems to suggest that, because it was not originally named as a defendant, it did not have notice of White's newly alleged negligent supervision claim. *See* R. 38 at 12. This argument is somewhat disingenuous. The City was well aware from the start that White was attempting to allege an entity claim based on the facts establishing his excessive force claim because the original *pro se* complaint named as defendants both "Chief of Police McCarthy" and the "City of Chicago Police Department" in addition to "John Doe (Unknown Officer)." That the entity defendant might have been named incorrectly, or that White's entity claims were not clear, is not relevant. *Pro se* complaints are to be construed more liberally than others, and this liberal construction relates to both the *pro se* plaintiff's factual allegations and their legal theories. *Ford,* 878 F. Supp. at 1126; *see also Pucci v. Litwin,* 828 F. Supp. 1285, 1296 (N.D. Ill. 1993) ("Pleading is no longer a formalistic game. Rule 15(c) allows relation back if the actions described in the amended pleading 'arose out of the conduct . . . *attempted to be set forth* in the original pleading . . . .") (emphasis added). Rather than dismiss White's claims against the "City of Chicago Police Department," the Court probably should have ordered the case caption to be amended to name the City of Chicago. *See Averhart,* 114 Fed. App'x at 247 (citing Fed. R. Civ. P. 17(a), (b)). The City was not prejudiced by this error, however, because it participated as a defendant in any event by virtue of Police Chief McCarthy being named as a defendant.

Where the defendant has received adequate notice and therefore the policy behind the statute of limitations is not implicated, the Court must construe Rule 15(c) "liberally . . . to effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems." *Staren*, 529 F.2d at 1263. Naming the Chicago Police Department as a defendant rather than the City of Chicago is a "common" legal mistake, and "the very type of mistake Rule 15 contemplates." *Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008); *see also King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (Rule 15(c)(1)(C) "provides for relation back . . . as a means for correcting the mistakes of plaintiffs suing official bodies in determining which party is the proper defendant") (internal quotation marks and citation omitted); *Dandridge v. Cook Cnty.*, 2013 WL 3421834, at *10 n.5 (N.D. Ill. July 8, 2013) ("To the extent that Cook County contends that the claims against it are time barred because only Sheriff Dart was named in the caption to the original complaint . . ., Cook County's argument is not well taken."). Moreover, the fact that the Corporation Counsel's office represented Police Chief McCarthy and currently represents the City "provides further evidence that [McCarthy and the City] are intertwined to such an extent that service on" the former provided the latter with sufficient notice of the lawsuit when White initially filed it. *Carothers v. Office of the Transitional Adm'r*, 2013 WL 3388876, at *3 (N.D. Ill. July 8, 2013). The Court concludes that the City received notice of White's intent to assert an entity claim against it by the original *pro se* filing, which named as defendants Police Chief McCarthy and the "City of Chicago Police Department."

Accordingly, the Court holds that White's claim against the City for negligent supervision relates back under Rule 15(c)(1)(B) to the filing of the original *pro se* complaint.

### b.    RULE 15(c)(1)(A)

In the alternative, Rule 15(c)(1)(A) provides a separate basis to Rule 15(c)(1)(B) for relation back. It states that an amendment to a pleading relates back to the date of the original pleading when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). The Rules Advisory Committee added Rule 15(c)(1)(A) to "make . . . clear that [Rule 15] does not apply to preclude any relation back that may be permitted under the applicable limitations law." Fed. R. Civ. P. 15, Advisory Comm. Notes 1991. Here, the applicable limitations law is Illinois law. Section 2-616(b) of the Illinois Civil Procedure Code codifies a rule for relation back of newly asserted claims that is essentially the same as the federal rule. *See Henderson v. Bolanda*, 253 F.3d 928, 933 (7th Cir. 2001). But the Rules Advisory Committee directs courts to look to the "controlling body of limitations law"—not merely the limitations law's test for relation back. Fed. R. Civ. P. 15, Advisory Comm. Notes 1991. "[I]f that law affords a more forgiving principle of relation back than the one provided in [the federal] rule, it should be available to save the claim." *Id.* Therefore, the Court looks beyond § 2-616(b) to the Illinois courts' interpretation of that provision.

*Porter v. Decatur Memorial Hospital*, 882 N.E.2d 583 (Ill. 2008), involved a situation similar to that here of a plaintiff seeking to amend the complaint by

adding new facts about a new defendant. The original complaint was against the plaintiff's treating physician, and the hospital where the plaintiff received the treatment later was joined. Later still, the plaintiff sought to add a new negligence claim against the treating radiologist. *Id.* at 586. The hospital objected to the proposed amendment, arguing that the plaintiff's new negligence count was barred by the two-year statute of limitations. *Id.* at 587. The court rejected that argument, stating that "[t]he purpose of the relation-back doctrine of section 2-616(b) is to preserve causes of action against loss by reason of technical default unrelated to the merits. Courts should therefore liberally construe the requirements of section 2-616(b) to allow resolution of litigation on the merits and to avoid elevating questions of form over substance." *Id.* at 589-90. The court then adopted the "sufficiently close relationship test," pursuant to which, if "there is a 'sufficiently close relationship' between the original and new claims, both in temporal proximity and in the general character of the sets of factual allegations and where the facts are all part of the events leading up to the originally alleged injury," relation back will apply. *Id.* at 592. The court concluded that the proposed amendment satisfied this test and should have been allowed.

Here, there is a "sufficiently close relationship" between White's original excessive force claim and his new negligent supervision claim, both in temporal proximity and in the general character of the factual allegations applicable to both. Moreover, the facts applicable to White's negligent supervision claim are part of the events leading up to the incident in which White allegedly was pushed down the

stairs. As evidenced by *Porter*, the City's overly technical argument that White's negligent supervision claim is separate and distinct from his excessive force claim does not pass muster under Illinois' relation-back jurisprudence. The City's statute of limitations argument therefore must be rejected for this reason even if relation back was not permitted under the federal version of Rule 15(c)(1)(B).

## 2. BATTERY CLAIM AGAINST THE INDIVIDUAL DEFENDANTS

The Individual Defendants also raise a statute of limitations argument for dismissal, but their argument is different from the one raised in the City's motion. The Individual Defendants point out that White did not name them as defendants until he filed the second amended complaint on June 30, 2015. Prior to that time, White named "John Doe" as the defendant police officer who allegedly pushed him. The Individual Defendants rely on long-standing Seventh Circuit law which holds that the naming of a John Doe defendant does not stop the running of the statute of limitations. Therefore, the Individual Defendants argue, White's naming of them as defendants on June 30, 2015, does not relate back to the filing of the original complaint and his battery claim against them is untimely.[22]

### a. RULE 15(c)(1)(C)

Under Rule 15(c)(1)(C), claims asserted against a newly identified defendant will relate back only if:

---

[22] It is unclear to the Court why the Individual Defendants only raise this argument as a defense to White's battery claim and not to his negligence claim. Both state law claims were filed at the same time and are governed by the one-year statute of limitations in the Tort Immunity Act.

> Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

To satisfy Rule 15(c)(1)(C), White's addition of the Individual Defendants on June 30, 2015 must meet three requirements. The Individual Defendants focus only on the third requirement, which is whether they "knew or should have known that the action would have been brought against [them] but for a mistake concerning [their] identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).[23] In applying Rule 15 to John Doe pleadings, the Seventh Circuit has interpreted the "mistake" language in Rule 15(c)(1)(C)(ii) as establishing a requirement that "is independent from whether the purported substitute party knew that action would be brought against him." *King*, 201 F.3d at 914.[24] Moreover, the Seventh Circuit has held that the "mistake" requirement is a threshold requirement that is not satisfied if the plaintiff simply

---

[23] The Individual Defendants do not appear to contest the other two requirements: (1) that Rule 15(c)(1)(B) is satisfied, and (2) that they received such notice of the action within the period provided by Rule 4(m) for serving the summons and complaint that they would not be prejudiced in defending on the merits. *See, e.g.*, R. 73 at 1; R. 61 at 6. The Court therefore will not discuss those requirements.

[24] *See also Wood v. Worachek,* 618 F.2d 1225, 1230 (7th Cir. 1980) ("[I]n the absence of a mistake in the identification of the proper party, it is irrelevant for purposes of Rule [15(c)(1)(C)] . . . whether or not the purported substitute party knew or should have known that the action would have been brought against him."); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998) ("this court has emphasized that Rule 15(c)(3) contains a separate 'mistake' requirement").

lacks knowledge concerning, or is ignorant of, the identity of the prospective defendant. *See Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006). Rather, "[i]t is the plaintiff's responsibility to determine the proper party to sue and to do so before the statute of limitations expires."[25] Thus, under the Seventh Circuit's "John Doe Rule"-application of Rule 15(c)(1)(C), the Individual Defendants' claims would be considered untimely.

### (i) *KRUPSKI*

In response to the Individual Defendants' argument that he may not rely on relation back to save his state law claims from the statute of limitations, White contends that the John Doe rule is no longer good law after *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010). *Krupski* is not a John Doe case, but it nonetheless required the Supreme Court to interpret the mistake language of Rule 15(c)(1)(C). The plaintiff in *Krupski* filed a lawsuit naming as defendant Costa Cruise, which turned out to be the marketing and sales agent of the actual carrier and operator of the ship, Costa Crociere. *Id.* at 541-42. Although the plaintiff was aware of the existence of Costa Crociere, she did not learn that Costa Crociere was the proper defendant until after the statute of limitations had expired. *Id.* at 543-44. The Eleventh Circuit affirmed the district court's disallowance of an amendment to substitute Costa Crociere for Costa Cruise under Rule 15(c)(1)(C), explaining that

---

[25] *See also Jackson*, 541 F.3d at 696 ("Not knowing a defendant's name is not a mistake under Rule 15."); *Baskin*, 138 F.3d at 704 (holding that the plaintiff "did not make a mistake concerning [the police] [o]fficer['s] identity when he filed his original complaint; he simply did not know the identity of the police officer who pulled him over").

because Krupski knew of Costa Crociere's identity prior to filing suit, her decision not to sue that party could not be construed as a "mistake." *Id.* at 548.[26]

The Supreme Court reversed, stating that, by focusing on the plaintiff's knowledge, the Eleventh Circuit "chose the wrong starting point." *Id.* Rule 15(c)(1)(C)(ii), the Supreme Court explained, "asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint." *Id.* (emphasis in original). What the plaintiff knew or should have known, the Court said, was "relevant *only* if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.* (emphasis added). And, "[f]or purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake." *Id.*

*Krupski* concerned a plaintiff's "knowledge of a party's existence," whereas John Doe pleading concerns a plaintiff's "lack of knowledge" regarding a potential defendant's identity. But there is no reason to conclude that the Supreme Court would have ruled any differently if the facts had involved what the plaintiff "did not know" instead of what the plaintiff did know. Quite the contrary, earlier in the opinion the Supreme Court expressly referred to not only what the plaintiff "knew" but what the plaintiff "should have known." Moreover, the Supreme Court also

---

[26] As discussed earlier, a "legal mistake"—*i.e.*, White's naming the wrong governmental entity as a defendant such as the CPD rather than the City—has long been recognized as qualifying as a "mistake" for purposes of Rule 15. The issue in *Krupski* was whether the term "mistake" also included "factual mistakes" like misunderstanding which of two related corporate entities was the party whose conduct was at issue.

noted that dictionary definitions of the word "mistake" include not only "'[a]n error, misconception, or misunderstanding,'" but "'*inadequate knowledge*, or inattention'" as well. *Id.* at 548-49 (quoting Black's Law Dictionary 1092 (9th ed. 2009) and Webster's Third New International Dictionary 1446 (2002)) (emphasis added). By referencing "inadequate knowledge" the Supreme Court implied that its reasoning applied to a John Doe pleading.

One could argue the Supreme Court's reference to "inadequate knowledge" was merely unexamined *dictum*, except that the Seventh Circuit, in interpreting the mistake language of Rule 15(c)(1)(C), also has treated lack of knowledge in the same manner as a factual misunderstanding about the identity of a potential defendant. *See Hall,* 469 F.3d at 596 ("A plaintiff's *ignorance or misunderstanding* about who is liable for his injury is not a 'mistake' as to the defendant's identity.") (emphasis added). Indeed, the plaintiff in *Hall* attempted to distinguish prior Seventh Circuit case law denying relation back "on the ground that [those cases] involved plaintiffs who sued 'unknown officers' or 'John Doe' defendants." *Hall*, 469 F.3d at 596. The Seventh Circuit rejected that argument, stating "[w]e do not think this distinction makes any difference." As the Seventh Circuit explained, "[w]hether a plaintiff names a fictitious defendant like 'John Doe' because he does not know who harmed him or names an actual—but nonliable—railroad company because he does not know which of two companies is responsible for his injuries, he has not made a 'mistake' concerning 'identity' within the meaning of Rule 15(c)[(1)(C)]." *Id.* The Seventh Circuit has held that *Krupski* "cut the ground out from under" *Hall's* view

that a plaintiff who does not know which of two companies is responsible for his injuries has not made a "mistake" within the meaning of Rule 15(c)(1)(C). *Joseph v. Elan Motorsports Technologies Racing Corp.*, 638 F.3d 555, 559 (7th Cir. 2011). While the issue was not before the court in *Joseph, Krupski* also must have "cut the ground out from under" *Hall's* view that the naming of a fictitious "John Doe" defendant was not a "mistake" either, because *Hall* said the two situations are to be treated the same under Rule 15(c)(1)(C) and nothing in *Krupski* undermines that portion of *Hall's* reasoning. In fact, as discussed, *Krupski* appears to endorse *Hall's* similar treatment of the two situations by noting that the definition of "mistake" includes not just "[a]n error, misconception, or misunderstanding" but "inadequate knowledge" as well.

There is no Seventh Circuit precedent directly discussing the impact of *Krupski* on the John Doe rule. Many district courts in this circuit, however, have continued to apply the John Doe rule after *Krupski,* typically without any acknowledgement of *Krupski.*[27] Several cases distinguish *Krupski* on its facts, holding that *Krupski* is inapplicable to the John Doe situation because it involved a factual misunderstanding whereas the John Doe rule involves lack of knowledge.[28] But that precise factual distinction, as just noted, was rejected by the Seventh

---

[27] *See, e.g., Henry v. City of Des Plaines*, 2015 WL 6407812, at *2 (N.D. Ill. Oct. 21, 2015); *Stoller v. Dart*, 2013 WL 2156049, at *5 (N.D. Ill. May 17, 2013); *Mihelic v. Will Cnty., Ill.*, 826 F. Supp. 2d 1104, 1116 (N.D. Ill. 2011).

[28] *See, e.g., Mitchell v. Nesemeier*, 2013 WL 5587887, at *5 (N.D. Ill. Oct. 9, 2013); *Demouchette v. Sheriff of Cook Cnty.*, 2011 WL 1378712, at *2 (N.D. Ill. Apr. 12, 2011); *Daniel v. City of Matteson*, 2011 WL 198132, at *4 (N.D. Ill. Jan. 18, 2011).

Circuit in *Hall.* Still other district court cases cite to Seventh Circuit opinions decided after *Krupski* which continue to reference the John Doe rule.[29] Those Seventh Circuit cases, however, are not controlling,[30] and, in any event, merely cite to the John Doe rule without questioning its continuing validity. *See Brown v. Deleon*, 2013 WL 3812093, at *6 and n.3 (N.D. Ill. July 18, 2013) ("none consider the impact of *Krupski*"); *see also Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 640 (7th Cir. 2015) ("unexamined assumptions of prior cases do not control the disposition of a contested issue").

On the other side of this body of post-*Krupski* case law continuing to apply the traditional John Doe rule are several district courts that have acknowledged a doctrinal change in the law of relation back occasioned by *Krupski* even as applied in the John Doe context. *See, e.g., Brown*, 2013 WL 3812093, at *6 ("*Krupski* supports that inadequate knowledge and lack of full information regarding a defendant's identity satisfies the mistake requirement for Rule 15(c)(1)(C)."); *Solivan v. Dart*, 897 F. Supp. 2d 694, 701 (N.D. Ill. 2012) (declining to apply the John Doe rule to a *pro se* litigant's claims against unnamed correctional officers because "more recent law [citing *Krupski*] dictates that the focus of Rule 15(c)(1)(c)

---

[29] *See, e.g., Vandenburgh v. Bannockburn Police Officer Robert Ogden*, 2016 WL 403663, at *3 (N.D. Ill. Feb. 3, 2016); *Martin v. Fort Wayne Police Dep't*, 2014 WL 1047801, at *4 n.4 (N.D. Ind. Mar. 18, 2014); *Watson v. Williamson*, 2013 WL 3353866, at *4 (C.D. Ill. July 3, 2013); *Todd v. Lake Cnty. Sheriff's Dep't*, 2013 WL 2156470, at *4 n.5 (N.D. Ind. May 17, 2013); *Bredenkamp v. Balkan Express, Inc.*, 2013 WL 5966416, at *4 (S.D. Ind. Nov. 8, 2013).

[30] One case, *Flournoy v. Schomig*, 418 Fed. App'x 528, 532 (7th Cir. 2011), is unpublished, and another, *Gomez v. Randle*, 680 F.3d 859, 864 n. 1 (7th Cir. 2012), cites to the John Doe rule in *dictum*.

is on the defendant rather than the plaintiff"); *Elliot v. Price*, 2011 WL 3439240, at *5-6 (S.D. Ill. Aug. 5, 2011) (explaining that *Krupski* "sheds fresh light on how [Rule 15(c)] should be applied," and deciding whether relation back should be permitted in John Doe case not based on the old "lack of information is not a mistake" rule, but on an examination of whether the newly added sheriff's deputies who the plaintiff sought to "add[ ] via Rule 15(c) amendment in place of the 'Unidentified Officers' knew or should have known that . . . [the plaintiff] would have sued them instead of or in addition to the other named Defendants"); *Smetzer v. Newton*, 2010 WL 3219135, at *10 (N.D. Ind. Aug. 13, 2010) (denying motion to dismiss John Doe defendants despite circuit law holding that lack of knowledge is not a mistake for purposes of Rule 15(c)(1)(C) because *Krupski* "refocuses the question away from whether [the plaintiff] knew or should have known the identity of [the newly named defendant] as the proper defendant, to whether [the newly named defendant] knew or should have known [during the Rule 4(m) period] that it would have been named as a defendant but for an error") (internal quotation marks and citation omitted).

It seems to the Court that the analysis of *Krupski* and its effect on the John Doe rule in this second group of district court cases is more compelling than the analysis in those district court cases that have upheld the John Doe rule even in the face of *Krupski*. Particularly persuasive to the Court is *Krupski's* admonition that Rule 15(c)(1) should be construed in a manner that furthers its purpose, which is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and

Rule 15 in particular, for resolving disputes on their merits." 560 U.S. at 550. In applying this rule of construction, *Krupski* observed that "[a] prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose," but that "repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id*. The Seventh Circuit expressed a similar view in *Joseph*, the only opinion in which that court has substantively discussed *Kruspki*, wherein the Seventh Circuit stated that "[a] party who is on notice long before the statute of limitations expires that he is an intended defendant, and who suffers no harm from the failure to have been named as a defendant at the outset, is in the same position as a defendant sued within the statute of limitations. The public policy expressed in a statute of limitations is therefore not undermined by relation back in the circumstances specified in the federal rule." *Joseph,* 638 F.3d at 558.

The only qualification or limit that the *Krupski* Court expressly acknowledged the mistake language in Rule 15(c)(1)(C) imposed on relation back was when the plaintiff makes "a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties," a situation the Court described as "the antithesis" of a mistake." *Id*. at 549. An inquiry into that issue, however, the Court said, was not a separate, threshold consideration independent of the inquiry into what the defendant understood.

Instead, whether the plaintiff made a deliberate choice is a factor under the Court's analysis that sheds light on the ultimate issue of whether the defendant legitimately believed that the limitations period had expired without any attempt by the plaintiff to sue him.

### (ii) *KRUPSKI* APPLIED TO THIS CASE

Adherence to the principles articulated in *Krupski* requires a different analysis of the facts of this case then simply applying the "lack of knowledge is not a mistake" principle of the traditional John Doe rule. The Court looks to whether there is any basis in the record for saying that the Individual Defendants could have legitimately believed that the limitations period had passed without any attempt to sue them. The answer is no. White named the John Doe police officer as a defendant, and the Individual Defendants have not argued that they were unaware of White's complaint within the prescribed time. Moreover, there is no basis for saying that White made "a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties." *Krupski*, 560 U.S. at 549. In fact, White's naming of a John Doe police officer shows the opposite—a clear intent to sue the person who he believes caused him to fall down the stairs. It would appear, therefore, that the Individual Defendants have no legitimate interest in repose and denying relation back would be a windfall to them.

Nevertheless, a few post-*Krupski* decisions in this circuit have extended the "deliberate choice" concept to include not just a deliberate choice not to sue a

previously unnamed defendant but a deliberate choice not to *discover the identity* of the new defendant. *See Fleece v. Volvo Constf. Equip. Korea, Ltd.*, 2012 WL 171329, at *4 (N.D. Ill. Jan. 20, 2012) ("Following *Krupski*, numerous lower courts have held that *Krupski* precludes relation back when a plaintiff made an affirmative choice not to discover the identity of the new defendant or to sue the new defendant before the limitations period expired."). This case law appears to equate "deliberate choice" with "lack of diligence." *See, e.g., Dandridge*, 2013 WL 3421834, at *4 (denying relation back in John Doe case where plaintiff waited almost two years and just before the statute of limitations was due to expire before filing lawsuit); *Pierce v. City of Chicago*, 2010 WL 4636676, at *4 (N.D. Ill. Nov. 8, 2010) (denying relation back in John Doe case where newly added defendant was identified in the plaintiff's arrest report, which the plaintiff had before the original complaint was filed).

Even if the Court were to apply this refinement of *Krupski,* however, there would be no basis for concluding that White made a deliberate decision not to discover the identity of the John Doe officer. Upon determining that the *pro se* complaint stated a valid § 1983 claim, the Court had a duty to assist White in identifying the unknown police officer. *See Donald*, 95 F.3d at 555 ("when the substance of a *pro se* civil rights complaint indicates the existence of claims against individual officials not specifically named in the caption of the complaint" and "the plaintiff faces barriers to determining the identities of the unnamed defendants, the court must assist the plaintiff in conducting the necessary investigation"). The Court had several options in assisting White, including appointing counsel and

ordering the City to disclose the identity of the unnamed police officer. *See id.* at 556. The Court took both approaches and entered an order directing Police Chief McCarthy to assist with identifying the unnamed police officer,[31] and also indicated its intention to appoint counsel.

Thereafter and up until the filing of the Individual Defendants' joint answer, the City represented to the Court that it was trying to identify the John Doe officer but had been unable to do so thus far. Then, eighteen months after the original *pro se* complaint had been filed and slightly less than fourteen months after the one-year statute of limitations had expired, the same counsel who made those representations to the Court on behalf of the City revealed who the John Doe officer was when she filed a joint answer on behalf of the Individual Defendants. While the joint answer does not admit that any of the Individual Defendants pushed White or otherwise caused White's fall, *see* R. 63 at 3 (¶¶ 8, 9, 11-13), it does admit that "Officer LaPadula"[32] was the police officer who, along with Borkowski, assumed custody over White at the Homan Square Police Station and transported him to the 11th District Police Station. *See* R. 63 at 3-5 (¶¶ 13, 19). In light of the joint answer, it is unclear to the Court why the City was unable to identify LaPadula as the John

---

[31] *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) (higher official named as defendant in § 1983 *pro se* complaint should not be dismissed at pleading stage where his "position would allow him, in a later stage of the case, to point to the ones really responsible" for the alleged misconduct).

[32] The Court assumes that "Officer LaPadula" is the Individual Defendant identified in the case caption as "MA LaPulda." If that assumption is correct, the case caption should be amended to reflect what appears to be the correct spelling of Officer LaPadula's name.

Doe officer when the Court first asked it to do so, or at the very least at any point prior to the Corporation Counsel's office filing the joint answer on behalf of the Individual Defendants.[33]

The facts here are similar to those in two of the previously cited district court cases—*Brown*, 2013 WL 3812093, at *6, and *Solivan*, 897 F. Supp. 2d at 701—both of which declined to apply the John Doe rule to preclude relation back. In *Brown*, the court had issued a *pro se* order in which it had advised the plaintiff that he needed to identify the John Doe officer prior to the expiration of the statute of

---

[33] The City and the Individual Defendants are obviously different parties (although both are represented by the Corporation Counsel's office). Nevertheless, it appears from the record that the City had enough information available to it to have discovered the identity of the officer in question prior to the Individual Defendants' appearance in the case. The *pro se* complaint alleged that there were two police officers involved in the incident; it identified Borkowski by name and badge number; and it stated that Borkowski was with the other officer when they retrieved White from the holding cell, walked him down the hallway, ordered him to stand up after he fell, walked him to a patrol car, and, finally, drove him to the 11th District station. R. 5 at 4-5. Presumably, the City could have at any time during these proceedings simply questioned Borkowski to find out the name of the other officer with him that day. The City was not asked to name the police officer "who pushed White down the stairs"; it was asked to identify the police officer who White *alleged* pushed him, which, based on the facts in the complaint, was the officer working with Borkowski that day. If for some reason Borkowski has not been available for questioning throughout the entire time this case has been pending, or if the City did question him but did not get any helpful information, then the City still could have questioned all of the Individual Defendants to ask if any of them helped Borkowski that day to do the tasks identified in the complaint. If there was any reason the City felt it could not question Borkowski or the Individual Defendants to obtain this information, the City should have informed the Court rather than lead the Court to believe that the City was trying to identify the officer but couldn't. In the end, however, this Court's relation back opinion does not turn on what the City did or did not do but on the fact that steps were taken by White, with the Court's help, to identify the John Doe defendant prior to the expiration of the statute of limitations, and, despite those steps, the John Doe officer was not identified until after the limitations period had run.

limitations, and to facilitate that identification, the court had ordered Chicago Police Superintendent Garry McCarthy to be added as a defendant. 2013 WL 3812093, at *3. Also in *Brown,* McCarthy's counsel (who, as here, was the same counsel who subsequently filed appearances for the John Doe officers once they were named and added as defendants) sent the plaintiff a copy of the police reports containing the names of the arresting officers. *Id.* at *4 & n.2. The plaintiff filed an amended complaint naming the arresting officers, but by then the statute of limitations had expired. *Id.* And, in *Solivan,* the *pro se* plaintiff had "identified the John Doe officers [in his complaint] as best he could based on their shift times on specific dates and at specific posts in the MCC and based on the incident log number for his injuries." 897 F. Supp. 2d at 702. The plaintiff "filed his *pro se* Complaint [a little over a year after the incident and a year before the two-year statute of limitations was to expire], and yet as of [eight months after filing the complaint], . . . it was unclear whether [the County] had yet provided the identities of the John Doe officers." *Id.*

The Individual Defendants attempt to shift the Court's focus away from the Court's efforts on White's behalf to identify the John Doe police officer to White's appointed counsel's failure to use formal discovery to find out who the unidentified John Doe officer was. The *Solivan* court rejected a similar argument. *See Solivan,* 897 F. Supp. 2d at 702 ("Although Solivan's counsel appears to have been careless in amending the pro se Complaint despite having identified the officers, the Seventh Circuit held that while a plaintiff's carelessness in failing to discover his

mistake is relevant to a defendant's claim of prejudice, 'carelessness is no longer a ground independent of prejudice for refusing to allow relation back.'") (quoting *Joseph*, 638 F.3d at 560)); *cf. Jackson,* 2001 WL 987729, at *3 ("While Jackson could have been *more* diligent in prodding the City for the answers to discovery that revealed Howard as the proper defendant, his conduct meets or exceeds the absolute minimum threshold necessary to be considered 'reasonable.'") (emphasis in original). In any event, the one-year statute of limitations expired in this case two weeks after appointed counsel entered an appearance, which is before counsel was able to even meet with his client for the first time. Therefore, in this case at least, the statute of limitations question turns not on any actions or inactions of White's appointed counsel, but on the steps this Court took in fulfilling its duty to assist White, as a *pro se* litigant, in making the investigation necessary to identify the John Doe defendant prior to counsel's appointment to the case.

In sum, the Court concludes that, after *Krupski*, the traditional John Doe rule should not be applied to prevent relation back if a plaintiff seeks to determine the identity of the John Doe defendant before the statute of limitations expires but is unable to do so,[34] provided that there is no other basis in the record for concluding that the newly identified defendant neither knew nor should have known that but for the plaintiff's inability to discover his identity he would have been named in place of the John Doe defendant. The Court further holds that the Court's efforts on White's behalf satisfied the requirement in this case that White

---

[34] *Compare Archibald v. City of Hartford*, 274 F.R.D. 371, 377 (D. Conn. 2011) (finding "exception" to traditional John Doe rule in these circumstances).

seek to determine the John Doe defendant's identity before the statute of limitations expired. Accordingly, White's state law claims against the Individual Defendants relate back to the filing of the original *pro se* complaint and are not barred by the statute of limitations.

### b.    RULE 15(c)(1)(A)

The Court need not rely solely on Fed. R. Civ. P. 15(c)(1)(C) to save White's state law claims from the Individual Defendants' statute of limitations defense. Like White's state law claims against the City, White's state law claims against the Individual Defendants also satisfy the alternative relation back rule of Rule 15(c)(1)(A). As previously noted, Rule 15(c)(1)(A) states that a court should apply the state relation back rule where doing so would save the amendment. Illinois' rule for relation back of amendments adding new parties is codified at 735 ILCS 5/2-616(d). It has been held that § 2-616(d) "is, in all material respects, identical to the federal rule." *In re Safeco Ins. Co. of Am.*, 585 F.3d at 331; *see also White v. City of Chicago*, 631 F. Supp. 2d 1073, 1074 (N.D. Ill. 2009) (Illinois' "relation-back provision [ ] codifies essentially the same test as Rule 15(c) in the federal context"). But the Court agrees with White that Illinois courts would hold that the pre-*Krupski* interpretation of the relation-back rule pursuant to which lack of knowledge is not a mistake is no longer a compelling interpretation of the relation back rule following the Supreme Court's decision in *Krupski*. *See Borschers v. Franciscan Tertiary Province of Sacred Heart, Inc.*, 962 N.E.2d 29, 49 (Ill. App. 2011) (concluding that, after *Krupski*, "a lack of knowledge about the identity of all

of those involved in the alleged wrongdoing qualifies as a 'mistake concerning the identity of the proper party' for the purposes of the relation-back doctrine").

*Zlatev v. Millette*, 43 N.E.3d 153  (Ill. App. 2015), is a recent Illinois case applying *Borschers* that is instructive. There, the plaintiff sought to sue the individual who struck him with a brick. He originally named a John Doe defendant as that person, and later named two other individuals in the alternative as that person (either "A" or "B"). *Id.* at 160 Later still, the plaintiff sought to add a third individual ("C"), as the person who hit him. The plaintiff argued that the court should allow relation back for his newly alleged claims against C because C was the person who struck him with the brick and knew or at least should have known that the plaintiff meant to sue him, not A or B. *Id.* The court agreed, holding that *Krupski* permitted the amendment:

> [W]hen the plaintiff filed the fourth amended complaint finally naming [C], [C] might have been surprised and no doubt was disappointed—but he could not plausibly claim unfair treatment. And more to the point, whether [A] or [B] should have remained in the suit at that point would have no bearing whatsoever on [C's] awareness of [the] plaintiff's mistake in not initially naming him in the complaint.

*Id. Zlatev* is very close to the facts here, and, under that court's reasoning, when White finally named the Individual Defendants in the second amended complaint, "they might have been surprised and no doubt were disappointed, but they could not plausibly claim unfair treatment." Accordingly, under Illinois' analysis of post-*Krupski* relation-back, White's state law claims are not barred.

### 3.   EQUITABLE TOLLING

In the alternative to holding that Rule 15(c) permits the relation back of White's state law claims against both the City and the Individual Defendants, the Court also holds that equitable principles likely tolled the statute of limitations. The doctrine of equitable tolling allows a "plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing." *Donald,* 95 F.3d at 561 (internal quotation marks and citation omitted). "Unlike the doctrine of equitable estoppel in this context, to invoke equitable tolling, the plaintiff does not have to show wrongdoing by the defendant." *Jackson,* 2001 WL 987729, at *2.

The Seventh Circuit has held that the requirements for application of equitable tolling are met (1) while the district court conducts a preliminary evaluation of the original *pro se* complaint, *Stewart v. Special Adm'r of Estate of Mesrobian*, 559 Fed. App'x 543, 547-48 (7th Cir. 2014); (2) while the summons is being served by the U.S. Marshal's Office, *Graham v. Satkoski*, 51 F.3d 710, 712-13 (7th Cir. 1995); and (3) and while a motion for appointment of counsel is pending, *Donald*, 95 F.3d at 562. Thus, the statute of limitations was tolled in this case from at least May 14, 2014 (the date on which White's *pro se* complaint was signed)[35] to October 22, 2014 (the date on which appointed counsel made an appearance on

---

[35] *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (the filing date for *pro se* persons in custody is "the time petitioner delivered it to the prison authorities for forwarding the court clerk").

White's behalf). In addition, the City did not turn over White's police records, despite promises to do so without the need for a formal discovery request, until sometime in January 2015. Therefore, the statute of limitations was further tolled until that time. *See Stewart,* 559 Fed. App'x at 547 ("the delay . . . was outside of Stewart's control and constituted good cause to extend the time for notice"). In order to obtain dismissal of White's state law claims based on the statute of limitations, the Individual Defendants would have to demonstrate that the one-year statute of limitations expired taking into account these applicable, well-established tolling periods. The Individual Defendants have not made any attempt to do so.

In addition, numerous courts in this district have applied equitable tolling when a plaintiff has been unable to obtain the identity of the city official who harmed him and his claims otherwise would be barred. *See, e.g., Brown,* 2013 WL 3812093, at *7 ("In light of plaintiff's circumstances, the short time by which the deadline was missed, and the lack of any prejudice to defendants, plaintiff has made a sufficient showing of diligence. Equitable tolling will be applied to the federal claims."); *see also Giles v. Newman*, 2012 WL 366957, at *3 (N.D. Ill. Feb. 2, 2012); *Martin v. City of Chicago,* 2010 WL 2836725, at *4 (N.D. Ill. July 16, 2010); *Moore v. Morales*, 415 F. Supp. 2d 891, 895-96 (N.D. Ill. 2006); *Garcia v. Ill. Dept. of Children & Family Servs.*, 2006 WL 2632919, at *14 (N.D. Ill. Sept. 11, 2006); *Flores v. Pawelski,* 2005 WL 309550, at *3-4 (N.D. Ill. Feb. 7, 2005); *Jackson,* 2001 WL 987729, at *3; *White v. Cooper*, 55 F. Supp. 2d 855, 855-56 (N.D. Ill. 1999); *see also Bryant*, 746 F.3d at 243-44 ("The district court should have equitably tolled the

statute of limitations because Mr. Bryant acted with reasonable diligence to obtain the missing information. . . . Mr. Bryant, as a prisoner proceeding *pro se*, should have been given more latitude and assistance in seeking to identify the officers' names."). "[T]he Court must balance the considerations in favor of equitable tolling against any prejudice suffered by defendant which was occasioned by the delay." *Parmelee v. Comparone*, 1998 WL 160910, at *2 (N.D. Ill. Mar. 31, 1998). The Individual Defendants have made no showing of prejudice. Therefore, the Court concludes that equitable tolling is likely to apply here through the date the identity of the John Doe defendant was revealed in the joint answer, which would mean that White's state law claims were timely filed.

## E. DISMISSAL OF INDIVIDUAL DEFENDANTS OTHER THAN LAPADULA

Finally, White has stated that he intends "to dismiss any officers not participating in the unlawful conduct when the actual police officer who pushed him has been identified." R. 51 at 4. The joint answer admitting that LaPadula was the officer who along with Borkowski escorted White from the Homan Square Police Station to the 11th District Police Station raises the question of whether the Individual Defendants other than LaPadula should be dismissed at this time. The parties have not addressed this question and are therefore directed to meet and confer in an attempt to reach an agreement on it prior to the next status. If the parties reach agreement on which of the Individual Defendants may be dismissed at this time, the parties should submit an agreed order for entry by the Court. In the

alternative, White may file a third amended complaint naming in addition to the City only the appropriate Individual Defendant or Defendants.[36]

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss, R. 38, is granted in part and denied in part, and the Individual Defendants' motion to dismiss, R. 61, is denied in its entirety. White's punitive damages claim against the City is dismissed with prejudice, and his § 1983 claim against the City is dismissed without prejudice. White is granted leave to file a third amended complaint within twenty-one days after the date of entry of this order. A status hearing is set for October 19, 2016 at 9:00 a.m.

ENTERED:

_____ *Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: August 15, 2016

---

[36] Should the parties fail to reach an agreement regarding the identity of the John Doe officer, the record still may require clarification concerning the identities of the Individual Defendants who are to remain in the case as possible John Doe defendants. One of the Individual Defendants, Gaytan, has not entered an appearance and may not have ever been served. Two other Individual Defendants, Lazarra and Jessani, have entered an appearance through the counsel, but their names do not appear among the Individual Defendants listed in the case caption of the parties' most recent court filings. The Court does not know whether that omission was inadvertent or intentional.